IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALVIN HEMPSTEAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-CV-68-SMY-RJD |
| | ) |
| RANDY DAVIS, LARUE LOVE, BRETT | ) |
| CAMPBELL, AUBREY EDWARDS, | ) |
| CHAD MYERS, B. HOLLOMAN, and | ) |
| BRIAN HARNER, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Calvin Hempstead, a former inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, asserting that his constitutional rights were violated while he was incarcerated at Vienna Correctional Center ("Vienna"). Specifically, Hempstead alleges he informed officials at Vienna that he had enemies there who attempted to kill him before he was in prison, but the officials failed to take any action and, as a result, he was attacked. Hempstead is proceeding in this action on an Eighth Amendment failure to protect claim against Defendants Brett Campbell, Randy Davis, Aubrey Edwards, Brian Harner, Blane Holloman, LaRue Love, and Chad Myers.

This matter is now before the Court for consideration of Defendants' Motion for Summary Judgment (Doc. 97). Hempstead filed a response (104). For the following reasons, Defendants' Motion is **GRANTED**.

## Background

Plaintiff Calvin Hempstead was incarcerated at Vienna Correctional Center from August 2013 to February 6, 2014 (Deposition of Calvin Hempstead, Doc. 98-1 at 14, 20; *see* Doc. 1-1 at

38). Shortly after he arrived at Vienna, Hempstead saw some of his "enemies", including Terrell Mackey, Tony Trumel, Antoine Banks, and "Little Ben" (Doc. 98-1 at 4). Soon thereafter, Hempstead advised Warden Randy Davis that he had enemies at Vienna, but Davis failed to take any action and merely asked Hempstead if he was "trying to move up north" (*Id.*). Hempstead was involved in some altercations with Terrell Mackey while at Vienna, but he is not sure when the altercations occurred (*Id.* at 3, 6).[1]

On September 20, 2013, Hempstead spoke to Sergeant Chad Myers and requested protective custody (*Id.* at 8). Hempstead explained that he had seen several enemies and that he feared for his life and safety (*Id.*). He again identified Terrell Mackey, Tony Trumel, Antoine Banks, and "Little Ben," as well as the Latin Kings (*Id.* at 9, 11). Myers immediately took Hempstead to internal affairs where Hempstead spoke to Brett Campbell and Blane Holloman (*Id.*). Sergeant Aubrey Edwards was also present during this time (*Id.*). Hempstead told the officers about his enemies at Vienna (*Id.*).

Hempstead was ordered to return to his assigned location, but he refused to follow the order (Doc. 1-1 at 62). He was issued a disciplinary ticket for disobeying a direct order (Doc. 98-1 at 9; Doc. 1-1 at 62). He was then placed in segregation for approximately one month (Doc. 98-1 at 11). At some point, some of the internal affairs officers told Hempstead they spoke to his identified enemies, who indicated they did not have a problem with him (*Id.* at 12).

On December 3, 2013, Hempstead was involved in an altercation with another inmate, "Wilson" (*Id.*; *see* Doc. 98-3). Hempstead was told by other inmates on his wing that Wilson only fought him because he was paid off by Terrell Mackey (Doc. 98-1 at 12). Hempstead did not sustain any injuries during this fight (*Id.* at 13).

---

[1] It is not clear whether the altercations occurred before or after Hempstead spoke to Warden Davis or the other Defendants.

Hempstead was involved in another fight with an unknown person a few days after his fight with Wilson (*Id.* at 16). Around this time, Hempstead was approached by Inmate Garcia who told him they were "going to have a problem" (*Id.* at 11). On December 17, 2013, Garcia, along with six other Latin Kings or Four Corner Hustlers came to Hempstead's cell (*Id.* at 10, 16). Garcia fought Hempstead in the cell, causing Hempstead to suffer a fracture of his hand (*Id.* at 17). Thereafter, Hempstead was placed in segregation on investigative status based on a disciplinary report written by Holloman (*Id.* at 18; Doc. 1-1 at 64). Hempstead was transferred to Pinckneyville Correctional Center ("Pinckneyville") shortly after the incident with Garcia (Doc. 98-1 at 20).

While at Vienna, Hempstead was involved in numerous other altercations with other inmates, including Wilson, Mackey and about five members of the Latin Kings (*Id.* at 14). It is not clear when these altercations occurred. Also, throughout his time at Vienna, Hempstead told Warden Davis and Assistant Warden Love about his enemies, but they failed to take action (*Id.* at 18).

Defendants maintain that a review of IDOC's electronic records indicate individuals by the name of Terrell Mackey, Antoine Banks, or Tony Trumel were never in IDOC custody (Declaration of Darren Harner, Doc. 98-2 at ¶¶ 11,12). They also maintain that an individual with the nickname "Little Ben" was incarcerated at Vienna during the relevant time, but there is no documentation substantiating Hempstead's claim that he threatened Hempstead's life or safety (*Id.* at ¶ 13).

## Discussion

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-*

*Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials "take reasonable measures to guarantee the safety of inmates." *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (other citations omitted)). In order to succeed on a claim for failure to protect against a prison official, a plaintiff must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and, (2) that prison officials acted with deliberate indifference to that risk. *Id.*

As to the first element, a plaintiff must show not only that he experienced or was exposed to a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). The second element is more difficult for a plaintiff to demonstrate, and requires an inquiry into a defendant prison official's state of mind. *Farmer*, 511 U.S. at 847. Specifically, a prison official may be held liable only if he knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Id.*

Thus, in order for Hempstead to prevail on his failure to protect claim, he must establish that Defendants had actual knowledge of an impending harm, easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from each Defendant's failure to prevent it. *Santiago*, 599 F.3d at 758. "In cases involving inmate-on-inmate violence, 'a prisoner normally provides actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety'." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Here, the evidence, even when viewed in Hempstead's favor, fails to establish that Defendants were aware of and disregarded a known hazard to Hempstead's health and safety. According to Hempstead, he told the defendants that he had enemies at Vienna. He specifically identified four individuals – Terrell Mackey, Tony Trumel, Antoine Banks, and "Little Ben" – but indicated that he generally feared the Latin Kings. There is no evidence that Hempstead was ever harmed by Tony Trumel, Antoine Banks, or "Little Ben." There is only evidence in the record that Hempstead was involved in fights with Terrell Mackey (who the IDOC contends has never been in its custody), Inmate Wilson, and Inmate Garcia.

With regard to Inmate Garcia, it appears he was a member of the Latin Kings (although this is not entirely clear). While Hempstead claims to have told Defendants that he feared the Latin Kings, there is no evidence that he specifically named or identified Garcia. There is also no evidence that he explained why he feared the Latin Kings. Therefore, even if Defendants knew Inmate Garcia was affiliated with the Latin Kings (and there is no indication that they did), they could not be expected to know that Garcia in particular posed a threat to Hempstead. *Miller v. McBride*, 64 F. App'x 558, 561 (7th Cir. 2003) (citing *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997) (officials had no way of knowing that plaintiff was in heightened peril when he did not report new threats from *different* gang members)). Nor could Defendants be expected to

have known that Hempstead may be at a serious risk of assault by Garcia or the Latin Kings due to his previous affiliation with the Vice Lords, as there is no evidence he told Defendants about his previous gang affiliation. *See Lewis*, 107 F.3d at 553. Simply put, Hempstead's general complaint about the Latin Kings was too vague to provide Defendants "actual knowledge of impending harm" and to require them to take action to prevent the assault that occurred between Hempstead and Garcia.

With regard to the fights that occurred between Terrell Mackey and Hempstead, the evidence is likewise insufficient to find that any Defendant knew of the threat Mackey posed to Hempstead and failed to take any action. Although Hempstead testified that he was involved in some altercations with Mackey, there is no evidence as to when the fights occurred. More importantly, there is no evidence that the fights occurred *after* Defendants were notified by Hempstead that Mackey posed a threat to his safety (and Defendants assert there is no evidence Mackey was ever in IDOC custody). Because Defendants cannot be deliberately indifferent to a threat they were not aware of, no reasonable jury could find that they violated Hempstead's Eighth Amendment rights by failing to protect him from Mackey.

There is documentation and evidence that Hempstead was in a fight with Inmate Wilson on December 3, 2013. This fight clearly occurred after Hempstead spoke with Defendants about his four enemies and the Latin Kings. Notably, however, Hempstead never told Defendants that Wilson was a threat to his safety. In fact, Hempstead did not know Wilson prior to their fight (Doc. 98-1 at 16), and there is no evidence that Wilson was a member of the Latin Kings or any other security threat group (*Id.* at 12). Hempstead merely asserts that Mackey was involved in this attack because he was told by other inmates on his wing that Mackey paid Wilson to attack him. But this inadmissible hearsay evidence may not be considered for purposes of summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is a

threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."). Because there is no evidence that Defendants had any knowledge that Wilson posed a threat to Hempstead, they were not deliberately indifferent in failing to protect him from attack. Finally, insofar as Hempstead makes vague references to other fights with unknown inmates, there is no basis for finding that Defendants disregarded a known risk as it is not clear who committed the assaults and when they occurred.

## Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Randy Davis, LaRue Love, Brett Campbell, Aubrey Edwards, Chad Myers, Blane Holloman, and Brian Harner (Doc. 97) is **GRANTED**. Plaintiff's claims against Davis, Love, Campbell, Edwards, Myers, Holloman and Harner are **DISMISSED with prejudice.** The Clerk of Court is **DIRECTED** to enter judgment against Plaintiff Calvin Hempstead and in favor of those defendants, and as no claims remain, to close this case. All other pending motions are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

**DATED: August 2, 2018**

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**